## 56728. TANT v. THE STATE.

BANKE, Judge.

The appellant was convicted of selling benzphetamine in violation of the Georgia Controlled Substances Act. On appeal he attacks certain rules promulgated by the State Crime Laboratory which he claims made it impossible for him to obtain an

independent chemical analysis of the drug.

Pursuant to his motion, the appellant was granted permission on May 16, 1977, to have his own expert analyze the alleged contraband. The order required that the analysis be completed by June 13, 1977, and that it be conducted subject to the State Crime Laboratory's rules governing independent drug examinations, a copy of which was attached to the order. In response to the appellant's request, the deadline was subsequently extended to July 29, 1977. On July 20, 1977, the appellant filed a motion attacking the crime laboratory's rules, alleging that they were "so restrictive as to render it scientifically impossible for defendant's expert to make an appropriate and thorough analysis of the alleged drug ..." The specific rules attacked were as follows: "(7) All instrumentation except the Mass Spectrometer will be available for use if the analyst can show that he has a working knowledge of the instrument . . . (9) No procedures, data or reference material compiled or stored at the Georgia State Crime Laboratory will be available for use by the analyst, [and] (10) The analyst will not be allowed access to any drug standards in the laboratory." (Drug standards are samples of known drugs which are used for comparison to the drug being analyzed.)

A hearing on this motion was not sought until the case was called for trial in February of 1978, seven months after it was filed. The appellant's expert never attempted to perform an examination or analysis of the contraband to determine whether he could identify it using the means at his disposal under the crime lab's rules. *Held:*

The Supreme Court ruled in *Patterson v. State,* 238 Ga. 204, 206 (232 SE2d 233) (1977), that a defendant charged with possession or sale of a prohibited substance has a "general right" to have his own expert make an independent examination of the substance. However, it also held that "[t]he trial court in the exercise of its inherent power to conduct the proceedings before it, should impose appropriate safeguards to insure that the evidence is unchanged and preserved for evidentiary use at the trial. This would generally require that the defendant's expert be allowed to examine the substance in the state laboratory *under the control and supervision of*

*the state* rather than relinquishing custody and possession of the substance to him." (Emphasis supplied.) *Patterson v. State,* 238 Ga. 204, supra, at 206. The reason for giving the state control and supervision over tests conducted in the crime lab is self-evident. It is to prevent disruption of the normal operations of the lab and to insure that no equipment, materials or evidence in the lab are abused or tampered with. It cannot reasonably be disputed that this is a legitimate governmental concern.

Each of the rules attacked by the appellant appears to be a reasonable response to this concern. The restriction on the use of the mass spectrometer is amply justified by its fragility and its enormous cost ($150,000). Indeed, the supervisor of the crime lab testified that because of these factors, only one employee of the lab itself was authorized to operate the instrument. When a state chemist responsible for analyzing a substance wishes to obtain a mass spectrometer test, he submits the sample to the operator and observes the results as the operator injects the sample into the machine. The supervisor further testified that the crime lab has a policy of making the mass spectrometer available to independent examiners on exactly this same basis, a fact which he stated had been made known to the appellant's expert in the past. This policy appears eminently reasonable, and we fail to see how it could have created an obstacle for the appellant in this case.

With regard to the restrictions against the use of crime lab data, procedures, reference material, and drug standards, there is no showing that these restrictions prevented the defense expert from conducting competent tests to show that the substance was not benzphetamine. Although the defense expert testified that he could not do "a valid, scientific analysis of any substance without the use of primary samples," this contention was vigorously disputed by the government's expert. Furthermore, the testimony at trial indicated that the state had performed four separate tests on the substance, only one of which had apparently involved the use of a drug standard. All the tests were positive for benzphetamine. More importantly, the defense expert admitted under questioning by the judge that he had never availed himself of the opportunity

to examine the drug to determine whether he could make an independent analysis of it under the court order as signed. Under these circumstances, it has not been made to appear that the crime lab's rules prevented the appellant from preparing an adequate defense to the charge against him.

*Judgment affirmed. Deen, P. J., and Smith, J., concur.*

SUBMITTED OCTOBER 4, 1978 — DECIDED NOVEMBER 28, 1978 — REHEARING DENIED DECEMBER 13, 1978 — 

*Cook & Palmour, Bobby Lee Cook, A. Cecil Palmour,* for appellant.
*Charles Crawford, District Attorney,* for appellee.